UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON MOSS and TONY BURNETT,

                Plaintiffs,

                                       Case Number 11-13429
v.                                                       Honorable David M. Lawson

WELLS FARGO BANK, N.A. and
DEUTSCHE BANK NATIONAL TRUST
COMPANY,

                Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       The defendants have moved for summary judgment of dismissal in this mortgage foreclosure case. The plaintiffs' five-count complaint includes claims to quiet title, for unjust enrichment, constructive trust, breach of Michigan Compiled Laws § 600.3205, and deceptive acts or unfair practices. The plaintiffs challenge the foreclosure of their mortgage on the bases of an allegedly faulty assignment, illegal signing of foreclosure documents outside the presence of a notary public and without confirming their accuracy (labeled as "robo-signing"), and an alleged failure to comply with a statutorily required loan modification procedure. The plaintiffs responded in opposition to the motion, and Court heard oral argument on February 23, 2012. The Court now finds that there is no genuine dispute as to any material fact, and the defendants are entitled to judgment as a matter of law. Therefore, the Court will grant the motion for summary judgment and dismiss the complaint.

I.

       The plaintiffs reside at 28780 Bell Road, Southfield, Michigan, which they purchased in June 1998. Apparently the property was refinanced, because the mortgage and note that are the subjects

of this lawsuit were executed between plaintiff Shannon Moss and defendant Wells Fargo Bank, N.A., ("Wells Fargo") on July 14, 2006. The mortgage was assigned to defendant Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-WFI ("Trust"), ("Deutsche Bank"). The assignment is dated November 24, 2008 and it was recorded on December 5, 2008.

At some point before July 15, 2010 (it is unclear when), the plaintiffs apparently defaulted on their loan, and the defendants instituted foreclosure by advertisement proceedings. The defendants published a notice in the Oakland County Legal News on August 18, 2010 stating that plaintiff Shannon Moss had the right to request a meeting with a housing counselor; the four required notices of foreclosure were published in the Oakland County Legal News on September 15, 22, 29, and October 6, 2011. The property was sold at a sheriff's sale on January 18, 2011 to defendant Deutsche Bank for $265,804.08. The redemption period expired on June 18, 2011, and the plaintiffs did not redeem the property.

On June 15, 2011, the plaintiffs filed a complaint in the Oakland County, Michigan circuit court. The defendants removed the case to this Court on August 8, 2011. The complaint lists five counts. In count I, the plaintiffs request that the Court quiet title in the subject property based on allegations that defendant Deutsche Bank's purchase of the property was illegal because the property was purchased after the closing date of the Trust and that the affidavits included in the sheriff's deed were robo-signed. In count II, the plaintiffs allege unjust enrichment, asserting that the purchase at the sheriff's sale was illegal and that affidavits were robo-signed. In count III, the plaintiffs request that the Court impose a constructive trust for the same reasons. In count IV (erroneously labeled count III in the complaint), the plaintiffs bring a claim for an alleged breach of Michigan Compiled

-2-

Laws § 600.3205, asserting that the defendants failed to send or the plaintiffs never received a "14 day letter with a copy of the program," the defendants failed to complete the loan modification process, and the defendants failed to send the plaintiffs a "denial letter with the calculations." Comp. ¶¶ 49-52. In count V (erroneously labeled count VII in the complaint), the plaintiffs bring a claim for a deceptive act and/or unfair practice, alleging that the defendants violated Michigan Compiled Laws § 600.3204 in an unspecified way and submitted affidavits in support of the foreclosure that were robo-signed.

The defendants filed a motion for summary judgment arguing that the foreclosure proceedings complied with applicable law and the plaintiffs do not have standing to challenge the validity of the various assignments of the note or mortgage. The plaintiffs filed a response in opposition. At oral argument, the plaintiffs asked for an opportunity to file a supplemental brief, which the Court allowed, and the defendants filed a supplemental brief of their own. The matter is now ready for decision.

II.

The standards for evaluating a motion for summary judgment under Federal Rule of Civil Procedure 56 are well known but bear repeating here. As the Sixth Circuit recently explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion

then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009). In addition, when "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Ref., LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

"[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must

-4-

be evidence on which the jury could reasonably find for the [opposing party]." *Highland Capital*, 350 F.3d at 546 (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted).

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

### A.

### 1.

The defendants first argue that the plaintiffs lack standing to make claims regarding the subject property because the redemption period has expired. The Court disagrees. Standing is required in order to confer subject matter jurisdiction upon federal courts under Article III of the Constitution. It is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court has stated that the standing requirement "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). There are three constitutional requirements for standing. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000); *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007). "To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will

-5-

likely be redressed by a favorable decision." *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing requirements. *See City of Cleveland*, 508 F.3d at 835. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *Coal Operators*, 291 F.3d at 916 (citing *Valley Forge*, 454 U.S. at 474-75). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Ibid.* "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Coal Operators*, 291 F.3d at 916 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir. 1991)).

The defendants, relying on *Overton v. Mortgage Electronic Registration Systems*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009), argue that the plaintiffs do not have standing because they no longer retain a legal interest in the property because the redemption period has expired. There is no merit to that argument. First, the defendant's argument relies on an incorrect notion of standing. District Judge Robert Jonker, in *Langley v. Chase Home Finance LLC*, No. 10-604, 2011 WL 1130926, at *2 n.2 (W.D. Mich. Mar. 28, 2011), aptly explained the defendant's mistake:

> Many Defendants suggest the basis for the ruling in *Overton* is a lack of Plaintiff's standing once the redemption period expires, but the Court of Appeals does not actually say this. Nor would it seem like Article III standing could possibly be in doubt. After all, the Plaintiffs in such cases are the last lawful owner and possessor

-6-

of the property.  Moreover, they often remain in continuing possession of the property notwithstanding any Sheriff's sale and expiration of a redemption period. Moreover, Plaintiffs in such cases claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights.  This certainly seems to satisfy the basic Article III requirement of "injury in fact," as well as any prudential considerations tied to a "zone of interests" analysis.  Indeed, it is hard to imagine a person with a better claim to standing to challenge the process at issue.  Of course, having standing to bring a claim does not mean you have a valid claim on the merits.  That is a different question.  *Overton* is best viewed as a merits decision, not a standing case.

*Langley*, 2011 WL 1130926, at *2 n.2.

Second, "[t]he [Michigan] Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding." *Manufacturers Hanover Mortgage Corp. v. Snell*, 142 Mich. App. 548, 553, 370 N.W.2d 401, 404 (1985) (citing *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630 (1935); *Gage v. Sanborn*, 106 Mich. 269, 279, 64 N.W. 32 (1895)).  "Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale." *Ibid.* (citing *Reid*, 270 Mich. at 267, 258 N.W. 630; 16 Michigan Law and Practice, Mortgages, § 174, pp. 438-39).

The defendants' standing argument must be rejected.  The plaintiffs allege continuing ownership of the property, *see* Compl. ¶ 7, and satisfy the constitutional and prudential standing requirements.

2.

However, the plaintiffs' quiet title and unfair trade practices counts are not supported by the record.  Those claims depend on proof that the defendants did not have authority to foreclose because of defects in the assignments of the note and mortgage.  The plaintiffs alleged that the Trust

illegally purchased the property at the sheriff's sale and that certain documents in support of the sale were robo-signed.  But that proof has not materialized.

With respect to the allegedly illegal purchase of the property by the Trust at the sheriff's sale, the plaintiffs appear to be arguing (although it is difficult to parse the plaintiffs' filings) that the Trust's closing date was in 2006 and therefore it could not have taken assignment of the mortgage legally on November 24, 2008.  And if the assignment was invalid ("void *ab initio*," as the plaintiffs say), the reasoning goes, then the defendants could not have commenced foreclosure proceedings lawfully.

The plaintiffs call the Court's attention to an unpublished Washtenaw County, Michigan circuit court decision that develops the argument that an assignment of a mortgage to a trust beyond the trust's closing date as set forth in the Pooling and Service Agreement (PSA) is ineffective, and therefore subsequent assignments by the trust to purported assignees confer no rights that would allow such assignees to foreclose by advertisement under Michigan law.  *See  Hendricks v. U.S. Bank National Association as Successor Trustee to Bank of America*, No. 10–849–CH, at 5-7 (Washtenaw Cnty., Mich. Cir. Ct., June 6, 2011).  The logic employed in that case is plausible, but even if this Court were to accept that court's reasoning, the argument does not help the plaintiff here.

Instead, the Court finds that the plaintiffs' claim of a defect in the foreclosure process fails for several reasons.  First, the plaintiffs merely assert that the Trust closed at an unspecified date in 2006 and that the subject property could therefore not be included in the Trust; they provide no evidence to support those assertions.  They allege in their complaint that the plaintiffs' mortgage was "illegally purchased by the Trust on November 24, 2008," Compl. ¶ 14(d), and cite "Exhibit 1" in support.  But Exhibit 1 to the complaint does not reference any assignment or purchase of the

-8-

mortgage. The defendants, on the other hand, furnished an affidavit from David Hhulet, a paralegal at Wells Fargo Bank, who states that the bank's records reflect that the mortgage was deposited into the trust on October 27, 2006. Def.s' Supp. Br., Ex. 2. According to the PSA, the closing date for the trust was October 30, 2006. Def.s' Supp. Br., Ex. 1 at 21. Therefore, the underlying premise of the plaintiffs' argument that the assignments were void is undercut by the uncontradicted evidence.

Second, the Sixth Circuit has rejected a similar challenge to the validity of an assignment under Mich. Comp. Laws § 600.3204(3) on the grounds that the invalidation of the assignment would not destroy the record chain of title because the public record would remain unchanged and that the plaintiff, as a non-party to the assignment, lacked standing to challenge the assignment. *See Livonia Props. v. 12840-12976 Farmington Road Holdings, LLC,* 399 Fed. App'x 97 (6th Cir. 2010). In *Livonia Properties*, the Sixth Circuit addressed the claim of a plaintiff who argued that the foreclosing party was required to prove that an assignment to a trust was legally valid in order for the chain of title to be valid. *Id.* at 102. The plaintiff argued that because the trust in question did not actually exist on the date of the assignment, the trust could not actually have received the mortgage on that date, and thus both the assignment and the record chain of title were invalidated. *Ibid*. The court found that the plaintiff had "presented no authority for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of a transfer. Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed." *Ibid*.

The *Livonia Properties* decision does not preclude a challenge by a homeowner to the legality of a foreclosure on the ground that the foreclosing party was not the actual owner or servicer

-9-

of the mortgage, which is one of the requirements of the foreclosure statute, Michigan Compiled Laws § 600.3204(1)(d). *See Talton v. BAC Home Loans Servicing LP*, --- F.Supp.2d ----, 2012 WL 855975, at *8 (E.D. Mich. Mar. 7, 2012) (holding that "*Livonia Properties* does not foreclose a challenge to compliance with the statute based on an argument that because an assignment was invalid (for example, because it was a forgery), the purported mortgage-holder did not actually hold the mortgage and therefore was not entitled to foreclose"). However, in this case, the plaintiffs have not come forward with evidence that creates a fact question on the validity of the transfers of the plaintiff's mortgage to the foreclosing entity.

Third, this case differs from *Livonia Properties* in a way that makes it even more clear that the plaintiffs' challenge must fail. In *Livonia Properties*, the plaintiff challenged the assignment on the basis that the trust to which the mortgage was assigned did not exist at the time of the assignment and therefore lacked legal capacity to take the assignment. Here, by contrast, there is no dispute that the Trust actually existed at the time of the assignment; the only question is whether the Trust, by accepting the assignment, violated the terms of the PSA. As the defendants note, if the mortgage loan was added to the Trust improperly, that might create a cause of action for the beneficiaries of the Trust. *See Livonia Property Holdings, L.L.C. v. 12480-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 747-48 (E.D. Mich. 2010) (citing *In re Almeida*, 417 B.R. 140 (Bankr. D. Mass. 2009)). However, the plaintiffs have presented no argument or authority to demonstrate on what basis they can challenge a breach of that agreement, to which the plaintiffs are not parties. Nor have the plaintiffs made any argument that would allow the Court to conclude that the plaintiffs could be considered a third-party beneficiary of the agreement. Nor have the plaintiffs offered anything more than conclusory statements to support their argument that a violation of the

agreement strips defendant Deutsche Bank of the legal authority or capacity to own the subject property.  And, as noted, the facts do not support the claim.  The *Hendricks* court did not address those issues.  The plaintiffs have failed either to state a plausible claim or to create a genuine issue of material fact on this issue.

The plaintiffs also challenge the foreclosure sale on the basis of robo-signing.  The plaintiffs argue that because the subject property could not have been included in the Trust for the reasons discussed above, the affiant must not have had personal knowledge of the facts in the documents because if she had "she would have read and known" that defendant Deutsche Bank "purchased the subject property by way of the Sheriff's Deed after the Closing date of the Trust."  Compl. at ¶ 24(e).  The plaintiffs also allege that the affiant "may have signed the affidavit outside the presence of a notary public."  *Id*. at ¶ 25.  The plaintiffs argue that the purchase of the subject property was improper because it was conducted by the affiant.  *Id*. at ¶ 27.  The plaintiffs' motion response does not illuminate these allegations, and they have offered no facts to support them.  It appears that the force of the plaintiffs' allegation of robo-signing lies in the argument that the affiant cannot have had personal knowledge because if she had, she would have been aware that the assignment to the trust was invalid.  The argument unravels in the absence of proof that the trust improperly received the mortgage.  The plaintiffs' allegation that the affidavits may have been signed outside the presence of the notary is belied by the face of the affidavits themselves, which are signed by a notary.  None of the signatures on the affidavits appear to be forged, and all clearly match.  The plaintiffs provide no evidence to suggest that the signatures were not made in the notary's presence, were forged, or in any other way are invalid.

-11-

Finally, even if the plaintiffs had provided any evidence or argument to support their assertions of robo-signing, the affidavits the plaintiffs are challenging are not *required* by law to begin or complete the foreclosure process. *See* Mich. Comp. Laws §§ 600.3204, .3256. Section 600.3256 provides:

> Any party desiring to perpetuate the evidence of any sale made in pursuance of the provisions of this chapter, *may* procure:
>
> (a) An affidavit of the publication of the notice of sale, and of any notice of postponement, to be made by the publisher of the newspaper in which the same was inserted, or by some person in his employ knowing the facts; and
> (b) An affidavit of the fact of any sale pursuant to such notice, to be made by the person who acted as auctioneer at the sale, stating the time and place at which the same took place, the sum bid, and the name of the purchaser; and
> (c) An affidavit setting forth the time, manner and place of posting a copy of such notice of sale to be made by the person posting the same.

Mich. Comp. Laws § 600.3256(1) (emphasis added). The challenged affidavits therefore were not mandatory before foreclosure could begin. *Prentice v. Bank of New York Trust Co.*, No. 283789, 2009 WL 1139332, at *1-2 (Mich. Ct. App. Apr. 28, 2009) ("Pursuant to the . . . clear and unambiguous statutory language, such an affidavit was not mandatory. . . . [T]he language of the statute is clearly permissive; it provides that a party *may* perpetuate evidence of the sale by recording an affidavit of the posting.").

Because the plaintiffs have failed to create a genuine issue of material fact with respect either to the validity of the assignment or of the foreclosure process itself, the Court will grant the defendants' motion on counts I and V of the complaint.

B.

-12-

Next, the defendants argue that the unjust enrichment claim is flawed for want of supporting facts and because an actual contract — the mortgage — governs the parties' relationship. The Court agrees. Under Michigan law, to plead a claim of unjust enrichment, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006). Michigan courts will then imply a contract to prevent unjust enrichment. *Ibid.* However, courts will not imply a contract where there is an express contract governing the same subject matter. *Ibid.* Here, the relationship between the plaintiffs and the defendants was governed by the mortgage and the note. The plaintiffs have not alleged that there are questions of fact as to the existence or terms of that contract, and therefore the plaintiffs' unjust enrichment claim fails. The Court will grant the defendants' motion on count II of the complaint.

## C.

The defendants argue that a constructive trust is an equitable remedy, rather than a cause of action. The plaintiffs respond that a constructive trust is an equitable remedy that can be imposed where the facts justify it, and that a constructive trust is justified in this case because the defendants misled the plaintiffs into believing that they would not violate Michigan Compiled Laws § 600.3205c, which prescribes the loan modification process and imposes certain obligations on mortgage holders. That allegation is the only fact that the plaintiffs assert entitles them to the establishment of a constructive trust; therefore, the plaintiff's request for a constructive trust depends on a finding that the defendants actually did violate section 600.3205c. For the reasons discussed below, no genuine issue of material fact exists on the point, and the plaintiffs have not shown a

violation of the statute.  Therefore, the Court will grant the defendants' motion on count III of the complaint.

### D.

The plaintiffs allege that the defendant failed to comply with section 600.3205c in that they failed to mail (or the plaintiffs never received) "the 14 day letter with a copy of the program," to complete the loan modification process, and to send the plaintiffs a letter confirming denial of a loan modification "with the calculations."  Compl. at ¶ 52.  The defendants argue that they did mail the required notice and that the loan modification requirements in section 600.3205c were never triggered because the plaintiffs did not contact a housing counselor.

Both section 600.3204 and 600.3205 have been amended since the events that form the basis of this complaint.  The amendments do not affect the issues presented here, and the Court will address the version of the statutes in effect at the time of the foreclosure.

A party may not begin foreclosure by advertisement proceedings if any of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.

(c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed.

(d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

-14-

> (e) The mortgagor and mortgagee have agreed in writing to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

> (f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Mich. Comp. Laws § 600.3204(4) (2009). The notice required by section 3205a must include "a list of housing counselors prepared by the Michigan state housing development authority." Mich. Comp. Laws § 600.3205a(1)(d) (2009).

"A borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan shall contact a housing counselor from the list provided under section 3205a within 14 days after the list is mailed to the borrower." Mich. Comp. Laws § 600.3205b(1) (2009). The housing counselor, if contacted by a borrower, "shall schedule a meeting between the borrower and the person [who has authority to enter into loan modifications] to attempt to work out a modification of the mortgage loan." *Id.* §600.3205b(3).

> If a borrower has contacted a housing counselor under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification.

Mich. Comp. Laws § 600.3205c(1) (2009). If the "person designated under section 3205a(1)(c)" is required to work with the borrower, he "shall provide the borrower with . . . [a] copy of any calculations made under this section." *Id.* § 600.3205c(5). The statute states that when a borrower is eligible for a loan modification, the mortgage holder may not pursue foreclosure by advertisement unless it offers the borrower a modification agreement and the borrower fails to accept it within 14 days. *Id.* § 600.3205c(7). If the mortgage holder nonetheless commences foreclosure proceedings in violation of this statute, the borrower may bring suit to "convert the foreclosure proceeding to a

-15-

judicial foreclosure." *Id.* § 600.3205c(8). However, conversion into judicial foreclosure is only available if "the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply." *Ibid.*

The plaintiffs' reference to "the 14 day letter with a copy of the program," Compl. at ¶ 52, presumably refers to the notice required by Mich. Comp. Laws § 600.3205a(1). The defendants counter that they did send the required notice on August 18, 2010, and provide a copy of that notice. Defs.' Mot. for Summ. J. Ex. 4. An examination of the copy provided by the defendants confirms that it meets the requirements of Mich. Comp. Laws § 600.3205a(1); the only possible dispute is that the copy provided refers to an included list of housing counselors, which is not part of the exhibit. The letter indicates that it was sent through certified mail with return receipt requested; the defendants do not provide a copy of the return receipt or delivery confirmation. However, the sheriff's deed indicates that notice was published in the Oakland County Legal News on August 18, 2010 informing the plaintiffs of their rights to request a meeting with the mortgage holder or servicer. Defs.' Mot. for Summ. J. Ex. 3. The sheriff's deed likewise contains an affidavit stating that the required notice was sent to the plaintiffs. *Ibid.* The plaintiffs have offered nothing to counter this evidence in their response, not even their own affidavits. Instead, they merely repeat their assertion that the defendants did not send or the plaintiffs did not receive this notice. That bare assertion cannot be sufficient to create a genuine issue of material fact on this issue. *Alexander*, 576 F.3d at 558 (stating that "the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion" (quoting *Street*, 886 F.2d at 1479)).

-16-

The plaintiffs also allege that the defendants failed to complete the loan modification process and failed to send the plaintiffs a denial letter with the required calculations before the sheriff's sale. However, the complaint fails to allege that the plaintiffs contacted a housing counselor as required by section 600.3205b. Under the statute's plain language, the defendants' section 600.3205c obligations were never triggered. Other courts that have addressed this issue also have found that mortgagors may not seek relief under section 600.3205c(8) unless they comply with the statutory requirements. *See Tawfik v. BAC Home Loans Servicing, LP*, No. 11-12590, 2011 WL 6181441, at *4 (E.D. Mich. Dec. 13, 2011); *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *5 (E.D. Mich. Nov. 1, 2011); *Carl v. BAC Home Loans Servicing, LP*, No. 11-11255, 2011 WL 3203086, at *3 (E.D. Mich. July 27, 2011). Nor do the plaintiffs allege that they qualified for a loan modification.

Unfortunately for the plaintiffs, it appears that even if the defendants had a duty to complete the loan modification process and send a denial letter with the required calculations before the sheriff's sale, the plaintiffs are not entitled to any form of relief after the sheriff's sale has been completed. *Benford v. CitiMortgage, Inc.*, No. 11-12200, 2011 WL 5525942, at *5 (E.D. Mich. Nov. 14, 2011) ("The statute plainly requires the borrower to seek his remedy prior to the completion of the foreclosure sale, as it merely converts the proceeding into one of judicial foreclosure. A borrower may not challenge a completed foreclosure sale under this statute."); *Lessl v. CitiMortgage, Inc.*, No. 11-10871, 2011 WL 4351673, at *6 (E.D. Mich. Sept. 16, 2011) (same). The defendants' motion must be granted as to count IV of the complaint.

III.

-17-

The Court concludes that the plaintiffs have not made a sufficient showing that fact questions exist on any of their claims.  The Court finds that the undisputed facts require entry of a judgment in favor of the defendants as a matter of law.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt. #5] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 28, 2012

<div style="border: 1px solid black; background: lightgray;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 28, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

</div>